## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TASHA CROSS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.:  4:08-CV-67-VEH** |
| | ) | |
| NOLAND HEALTH SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This action is brought under § 216(b) of the Fair Labor Standards Act ("FLSA") by Plaintiff Tasha Cross ("Cross") against Defendant Noland Health Services, Inc. ("Noland") and was initiated on January 11, 2008. (*See generally* Doc. 1).  In her complaint, Cross alleges that she and other similarly situated employees of Noland have been unfairly compensated under the FLSA because they "are automatically deducted thirty minutes for an unpaid lunch from time shown on time clock entries" and while sometimes they take a "full thirty minute lunch break away from their work station, [] most of the time that [is] not true."  (Doc. 1¶¶ 7-8).  Cross also complains that Noland has violated the FLSA "by working [her] and other

similarly situated employees 'off the clock' pre shift and post shift." (Doc. 1 ¶ 18).

Initially, the complaint included five separate counts. (*See generally* Doc. 1). Now the complaint has four counts that remain, as count three for FLSA 29 C.F.R. § 785.48(b) rounding violations was dismissed by the court (Doc. 14) on Cross's motion (Doc. 13) filed on April 30, 2008. Accordingly, the current counts are as follows: count one for FLSA 29 C.F.R. § 785.19 uninterrupted meal break violations (Doc. 1 ¶¶ 14-16);[1] count two for FLSA "off the clock" violations (*Id.* ¶¶ 17-19); count four for collective action treatment (*Id.* ¶¶ 23-32); and count f[ive] for work and labor. (*Id.* ¶¶ 33-35).

Pending before the court are Cross's Motion to Facilitate Court-Approved

---

[1] As this court has previously explained the meaning of a bona fide meal period under 29 C.F.R. § 785.19:

> The standard for determining whether a meal period is a "bona fide meal period" in the Eleventh Circuit is set forth in *Kohlheim v. Glynn County, Ga.*, 915 F.2d 1473, 1477 (11th Cir.1990). To satisfy this standard, the employer must establish that an employee is "completely relieved from duty." To be completely relieved from duty, employees cannot be subject to "significant affirmative responsibilities" during the meal period. 915 F.2d at 1477. The "essential consideration" is whether the employees "are in fact relieved from work for the purpose of eating a regularly scheduled meal." *Id.*

*Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1306-07 (N.D. Ala. 2008) (footnote omitted).

Notice Under 29 U.S.C. § 216(b) (the "Notice Motion") (Doc. 17)[2] filed on June 25, 2008, and Motion to Toll the Statute of Limitations (the "Tolling Motion") (Doc. 20) also filed on June 25, 2008.  Cross seeks to send notice of the action to all present and former hourly, non-exempt employees of Noland "who are/were not paid overtime for hours worked over forty in one or more weeks during lunch, or after clocking in before shift start or after shift end from January 11, 2005 to the present."  (Doc. 17 at Ex. A at 1).[3]

Noland filed its opposition (Doc. 26) to the Notice Motion on July 15, 2008. In it Noland generally asserts that Cross's FLSA claims are not suited for treatment

---

[2] 29 U.S.C. § 216(b) authorizes employees to bring collective pay actions "in behalf of . . . themselves and other employees similarly situated" who file notices of consent to join or opt-in to the suit.  The Notice Motion includes FLSA declarations from Cross and ten other potential opt-in plaintiffs:  (1) Denetha Petty ("Petty"); (2) Deborah A. Edge Constable ("Constable"); (3) Aisha L. Embery ("Embery"); (4) Francisca Herrera ("Herrera"); (5) Clarissa D. Truss ("C. Truss"); (6) Philica Wade ("Wade"); (7) Sujutoria Truss ("S. Truss"); (8) Shaunda Whiteside ("Whiteside"); (9) Tangela Leonard ("Leonard"); and (10) Jacqueline Cooley ("Cooley").

[3] The proposed class definition states in full:

All present and former hourly employees of Noland Health Services, Inc., who are/were employed as hourly, non-exempt employees and who are/were not paid overtime for hours worked over forty in one or more weeks during lunch, or after clocking in before shift start or after shift end from January 11, 2005 to the present.

(Doc. 17 at Ex. A at 1).

3

as a collective action "[e]ven under the fairly lenient standard favoring conditional class certification, [because] Plaintiff cannot satisfy [the applicable] requirements." (Doc. 26 at 2).

Noland then proceeds to divide its opposition into the following three primary arguments against conditional collective action certification:  1)  "Plaintiff has not alleged facts sufficient to include any employees employed by Defendant at a facility other than the Nursing Staff of the Nursing Home Facility of the Village at Cook Springs."  (Doc. 26 at 2-9); 2) "Defendant's evidence reveals that even when limited to nursing staff hourly employees at the Village at Cook Springs Nursing Home Facility, the potential class members are still not sufficiently 'similarly situated' for conditional class certification and notice."  (Doc. 26 at 10-16); and 3) "For the same reasons, employees of the Village at Cook Springs' Assisted Living Facility and Special Care Assisted Living Facility should be excluded from any potential class." (Doc. 22 at 16-19).

Cross filed her reply (Doc. #28) on July 25, 2008.  In it Cross concedes that she does "not seek locations of Defendant other than The Village at Cook Springs[.]" (Doc. 28 at 1).  Accordingly, the court agrees with Cross that "[t]his eliminates the issues framed in Defendant's brief, pages 2-5 and 8-9" relating to Noland's other

locations.[4]  (*Id.*).  Therefore, the court will not undergo any analysis of the suitability of conditional collective action certification of hourly Noland employees working at a place other than The Village at Cook Springs location (the "Village").

As for the Tolling Motion, Noland filed its opposition (Doc. 22) on July 7, 2008.  Cross then filed her reply (Doc. 23) on July 11, 2008.  Finally (and after obtaining permission on July 16, 2008, from the court to do so), Noland filed its surreply (Doc. 27) on July 21, 2008.

After consideration of the Notice Motion, the Tolling Motion, the related briefs and evidence, and for the reasons set forth hereinafter, Cross's Notice Motion is **GRANTED**.  More specifically, the court will certify a FLSA collective action as described more specifically below.  Further, the Tolling Motion is **DENIED**.

## II.    FACTS

### A.    Cross

Cross was employed with Noland as a non-exempt  hourly paid employee from May, 2005 until January 4, 2008.  AF No. 1.[5]  During her tenure, she was employed

---

[4]  To the extent these pages address the issue of excluding hourly employees from departments other than nursing at The Village at Cook Springs location from the conditional class definition (Doc. 26 at 8-9), the court has considered Noland's arguments, but rejects them.

[5]  Cross provided a statement of facts (as substantiated through her evidentiary submission and/or Noland's answer to the complaint) in support of her Notice

as both a CNA and an LPN.  AF No. 2.  Cross's last rate of pay was $18.58 per hour.
AF No. 3.

Cross primarily worked the night shift where she was the only nurse on the
floor so she could not always leave her station to go take a meal break.  AF No. 4.1.
Cross was required to answer the phones or assist patients during the time that she
was deducted for lunch.  AF No. 4.2.  To the extent that she had a break at all to eat
at her work station, Cross would be constantly interrupted.  AF No. 4.3.  During this
meal period for which Cross was deducted, she was required to continue her work
duties.  AF No. 4.4.

There were times when Cross would clock out at her regularly scheduled end
time but would then be required to go do another job duty for Noland, off the clock.
AF No. 5.1.  For example, after clocking out, she would sometimes be required to
take a phone call or do some paperwork before leaving the premises.  AF No. 5.2.

Noland requires employees to clock out by a certain time for a shift or they will

---

Motion, the substance of which Noland never specifically responded to, much less
refuted, in its brief.  In light of this omission, the court accepts Cross's factual
allegations as true for the purposes of analyzing the Notice Motion.  The designation
"AF" stands for admitted fact and corresponds to the numbering system used by Cross
in Doc. 18.  A number following a decimal point corresponds to the particular
sentence within the numbered statement of facts.  For example, (AF No. 4.2) would
indicate the second sentence of paragraph 4 of Cross's statement of facts is the
subject of the court's citation to the record.

be disciplined.  AF No. 6.1.  Cross was required to clock out at shift end time and then complete job duties off the clock.  AF No. 6.2.  This time resulted in unpaid overtime.  AF No. 6.3.

**B.    Petty**

Petty was employed with Noland as a non-exempt hourly paid employee from July 1, 2003 until September, 2007.  AF No. 7.  Petty was employed as a CNA during her tenure with Noland.  AF No. 8.  Petty's last rate of pay was $11.36 per hour.  AF No. 9.

Petty primarily worked the six a.m. to six p.m. shift.  AF No. 10.1.  Petty rarely was able to take an uninterrupted lunch break.  AF No. 10.2.  At least once a week, she would not take any type of lunch break because the floor would be short handed and she could not leave the floor at all.  AF No. 10.3.

On days when Petty did go to the break room to eat lunch, she would be constantly interrupted and required to assist patients.  AF No. 10.4.  During the unpaid meal break she was required to continue her work duties if necessary.  AF No. 10.5.

There were times when Petty would clock out at her regularly-scheduled end time but would then be required to go do another job duty for Noland, off-the-clock.  AF No. 11.1.  For example, after clocking out, she would sometimes be required to

7

assist a patient before leaving.  AF No. 11.2.

Petty got to work around 5:30 a.m. and went to the floor before clocking in. AF No. 12.1. She often did job duties before she was allowed to clock in at her scheduled start time of 6:00 a.m.  AF No. 12.2.  This time resulted in unpaid overtime.  AF No. 12.3.

On most, if not all weeks that Petty worked for Noland, she was not paid for overtime resulting from the lunch breaks she was not paid and/or time spent working before and/or after clocking in or out.  AF No. 13.1.  This time was in excess of the forty hours she was scheduled to do work.  AF No. 13.2.  Based on Petty's observations, this practice was company-wide and other employees were deducted for lunch periods for which they were not paid, as well as required to perform work before and/or after clocking in or out.  AF No. 14.

## C.    Constable

Constable has been employed with Noland as a non-exempt hourly paid employee from April 25, 2006, through August 10, 2007.  AF No. 15.  Constable was employed as a CNA during her tenure with Noland.  AF No. 16.  Constable's last rate of pay was $9.79 per hour.  AF No. 17.

Constable primarily worked the 5:45 p.m. to 6:15 a.m.  AF No 18.1.  Constable was rarely able to take an uninterrupted lunch break.  AF No. 18.2.  When Constable

8

could not take a lunch break, she continued to perform her regular work duties.  AF No. 18.3.

**D.    Embery**

Embery has been employed with Noland as a non-exempt hourly paid employee from December 19, 2001, through the present.  AF No. 19.  Embery  has been employed as a CNA during her tenure with Noland. AF No. 20.

Embery's last rate of pay was $9.76 per hour.  AF No. 21.  Embery was rarely able to take an uninterrupted lunch break.  AF No. 22.1.  When she could not take a lunch break, she continued to perform her regular work duties.  AF No. 22.2.

**E.    Herrera**

Herrera was employed with Noland as a non-exempt hourly paid employee from April 12, 2004, through July 8, 2007.  AF No. 23.  Herrera was employed as a CNA during her tenure with Noland.  AF No. 24.  Herrera's last rate of pay was $10.10 per hour.  AF No. 25.

Herrera primarily worked the Cornerstone/six p.m. to 6 a.m. shift.  Herrera was rarely able to take an uninterrupted lunch break.  AF No. 26.1.  When she could not take a lunch break, Herrera continued to perform her regular work duties.  AF No. 26.2.

### F.    C. Truss

C. Truss was employed with Noland as a non-exempt hourly paid employee from approximately May, 2003, through March, 2006.  AF No. 27. C. Truss was employed as a CNA, and as a LPN during her tenure with Noland.  AF No. 28.  C. Truss's last rate of pay was $13.82 per hour.  AF No. 29.

C. Truss primarily worked the 2-10 shift.  AF No. 30.1.  C. Truss was rarely able to take an uninterrupted lunch break.  AF No. 30.2.  When she could not take a lunch break, she continued to perform her regular work duties.  AF No. 30.3.

### G.    Wade

Wade was employed with Noland as a non-exempt hourly paid employee from July, 2005, through approximately June or July, 2007.  AF No. 31. Wade was employed as a CNA during her tenure with Noland.  AF No. 32.  Wade's last rate of pay was $9.75 per hour.  AF No. 33.

Wade primarily worked 12 hours per day from 6 a.m. to 6 p.m.  AF No. 34.1.  Wade was rarely able to take an uninterrupted lunch break.  AF No. 34.2.  When she could not take a lunch break, she continued to perform her regular work duties.   AF No. 34.3.

### H.    S. Truss

S. Truss was employed with Noland as a non-exempt hourly paid employee

from June, 2005, until September, 2007.  AF No. 35.   S. Truss was employed as a CNA during her tenure with Noland.  AF No. 36.  S. Truss's last rate of pay was $9.83 per hour.  AF No. 37.

She primarily worked 12 hours per day from 6 a.m. to 6 p.m.  AF No. 38.1. She rarely was able to take an uninterrupted lunch break.  AF No. 38.2.  When she could not take a lunch break, she continued to perform her regular work duties.   AF No. 38.3.

### I.   Whiteside

Whiteside was employed with Noland as a non-exempt  hourly paid employee from May 28, 1998, through August 17, 2006.  AF No. 39.  Whiteside was employed as a CNA during her tenure with Noland.  AF No. 40.  Whiteside's last rate of pay was $10.24 per hour.  AF No. 41.

Whiteside primarily worked the first shift.  AF No. 42.1.  She rarely was able to take an uninterrupted lunch break.  AF No. 42.2.  When she could not take a lunch break, she would continue to perform her regular work duties.  AF No. 42.3.

### J.   Leonard

Leonard was employed with Noland as a non-exempt hourly paid employee from May, 2004 through the present.  AF No. 43.  Leonard was employed as a CNA and LPN during her tenure with Noland.  AF No. 44.  Leonard's last rate of pay was

$17.23 per hour.  AF No. 45.

Leonard primarily worked the 10 p.m. to 6:00 a.m. shift.  AF No. 46.1.  She rarely was able to take an uninterrupted lunch break.  AF No. 46.2.  When she could not take a break, she continued to perform her regular work duties.  AF No. 46. 3.

### K.    Cooley

Cooley was employed with Noland as a non-exempt hourly paid employee from June of 2005, through September of 2007.   AF No. 47.  Cooley was employed as a CNA during her tenure with Noland.  AF No. 48.  Cooley's last rate of pay was $9.83 per hour.  AF No. 49.

Cooley primarily worked 12 hours per day from 6 a.m. to 6 p.m.  AF No. 50.1.  She rarely was able to take an uninterrupted lunch break.  AF No. 50.2.  When she could not take a lunch break, she continued to perform her regular work duties.   AF No. 50.3.

### L.    Facts Common to the Above Employees and Overall Purported Collective Action

Each employee was rarely, if ever, able to take a full thirty minutes for her lunch break.  AF No. 51.1.  They were not fully relieved from their work duties and work station.  AF No. 51.2. Each person regularly worked over forty hours in a work week, so that Noland's failure to pay for pre shift, interrupted lunch, or post shift

amounted to failure to pay overtime wages.  AF No. 52.

Noland automatically deducts thirty minutes for a meal break from time shown on time records for each hourly, non-exempt employee.   AF No. 53.  Noland admits that patient needs may, from time to time interrupt a meal break for its CNA and LPN employees.  AF No. 54.  Noland admits that it only pays for time hourly, non-exempt employees spend working if reported to it by the employee.  AF No. 55.

Noland admits that some of its hourly, non-exempt employees clock in and begin working before the start of their scheduled shift.  AF No. 56.  Noland's policy establishes that the only way an employee may be paid for work performed during a meal period, and not otherwise have that time deducted from their pay, is if the employee reports the missed meal period to her supervisor.  AF No. 57.

Noland calculates overtime based on a 40 hour per hour week basis.  AF No. 58.  Based on observations by the above group of employees, this practice was facility-wide and other employees were automatically deducted for lunch periods for which they worked through as well as required to perform work after clocking out. AF No. 59.  It is the belief of Cross and the purported opt-in plaintiffs that other employees, current and former, would be interested in joining the collective action. AF No. 60.

### III.    ANALYSIS

#### A.    Notice Motion

##### 1.    Legal Background

Section 216(b) of the FLSA, provides that:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

This court uses the "two-step" approach to § 216(b) certification adopted by several other courts.  First, the court determines whether a collective action should be certified for notice purposes. Then, after discovery is completed and the case is ready for trial, the court revisits the issue of certification.  Therefore, certification, if granted at the preliminary stage, is always conditional.

In making the initial decision regarding certification, the court must consider whether it will serve the purposes and putative benefits of a collective action under § 216. The Supreme Court has identified the main benefits of a collective action under § 216(b):

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).  Accordingly, the court must balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing the case to proceed collectively.  *Bayles v. American Medical Response of Colorado, Inc.,* 950 F. Supp. 1053, 1067 (D. Colo. 1996).

As Cross points out, a court's decision to authorize the sending of notice to potential class members in collective actions brought under § 216(b) is discretionary in nature.  *Haynes v. Singer Co.*, 696 F.2d 884, 888 (11th Cir 1983) ("Surely, there was no abuse of discretion on the part of the trial court; or to put it another way, we are not left with the impression that any mistake has been committed.") (footnote omitted); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court.") (emphasis added).

Under the applicable collection action legal principles, this court must "satisfy itself that there are other employees of [Noland] who desire to 'opt in' and who are

'similarly situated' [to Cross] with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Cross bears the burden of demonstrating a "reasonable basis" for her claim that collective action status is appropriate.  *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citation omitted).

### 2.    Application

#### a.    Opt-In Interest Requirement

Turning to the first requirement, Cross proffers as supporting evidence the declarations noted above as well as the executed consents to become a party plaintiff in this case from the following employees of Noland:   (1) Petty (Doc. 9 at Ex. A at 2); (2) S. Truss (Doc. 9 at Ex. A at 3); (3) Sedekia C. Bell ("Bell") (Doc. 12 at Ex. A at 2); (4) Constable (Doc. 15 at Ex. A at 2); (5) Embery (Doc. 15 at Ex. A at 3); (6) Herrera (Doc. 15 at Ex. A at 4); (7) Leonard (Doc. 15 at Ex. A at 5); (8) Rickaria McKinney ("McKinney") (Doc. 15 at Ex. A at 6); (9) C. Truss (Doc. 15 at Ex. A at 7); (10) Whiteside (Doc. 15 at Ex. A at 8); (11)  Cooley (Doc. 16 at Ex. A at 2); and (12) Wade (Doc. 16 at Ex. A at 3).  The foregoing consents establish more than a mere expectation that other employees would be interested in joining the proposed collective action.

The record (by cross-referencing the declarations) establishes that the bulk of

these consents come from either current or former employees working in the positions of CNA/LPN at Noland.  However, the court is unable to tell from the record the positions held by either Bell or McKinney as their consents do not reflect any corresponding job titles and, unlike the other employees referenced above, neither one filed a substantive declaration in support of the Notice Motion.[6]

Noland challenges neither the content nor the authenticity of any of these consent and/or declaration documents.  While Noland does offer declarations from several employees who swear that they never have performed work off the clock and never have had a meal period interrupted, this body of evidence is insufficient to

---

[6] The court notes that, in its opposition brief, Noland indicates that Cross "has no support from the non-nursing staff."  (*See* Doc. 26 at 9).  Assuming that this statement is true, the court is not aware of (nor has Noland cited to) any controlling authority that requires evidence of a desire to opt-in from employees holding specific job categories to satisfy the sufficient interest requirement at the conditional certification stage.

Moreover, to the extent Noland relies upon *Davis v. v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004) (*see* Doc. 26 at 8-9), such citation is misplaced.  *Davis* involved no position-specific analysis.  Instead the court concluded that "the plaintiffs ha[d] not carried their burden" because they had "filed no affidavits or consents from these would-be class members to suggest that they are actually willing to join the suit."  *Davis*, 303 F. Supp. 2d at 1277 (emphasis added) (footnote omitted).  Here, unlike *Davis*, the record includes twelve consents, with ten of those employees also filing declarations in support of the collection action.  "Courts have affirmed the existence of other employees who desire to opt-in on the basis of affidavits of the other employees[.]"  *Davis*, 303 F. Supp. at 1277 (citation omitted).

negate the weight that is due to be afforded to the testimony from those employees who have stated otherwise under penalty of perjury and/or who have independently expressed their desire to join the litigation as a party plaintiff during this initial phase.

In fact, in its significant silence,[7] Noland's brief really abandons (or alternatively concedes) the issue of whether Cross has adequately met the opt-in interest requirement <u>at least with respect to its nursing staff serving the nursing home at the Village</u>.[8]  Therefore for all these reasons, Cross has established a reasonable basis for the court to conclude that an interest to opt-in exists as to the proposed collective action of all hourly employees at Noland's Village location.

### b.   Substantially Similar Requirement

As for the second part, the court reads *Dybach* to require a comparison of the

---

[7] *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)).  "[T]he onus is upon the parties to formulate arguments[.]"  *Dunmar*, 43 F.3d at 599 (citation omitted).

[8] The court acknowledges that Noland argues that Cross has failed to satisfy the sufficient interest requirement by not including evidence of a desire to opt-in from any nurses (or other hourly employees) serving the assisted living facility ("ALF") and the special care assisted living facility ("SCALF") as opposed to the nursing home portion of the Village.  (Doc. 26 at 18-19).  The court has already rejected this position regarding sufficient interest for the reasons explained in n.6, *supra*.

pool of potential opt-in candidates with Cross to see if their job requirements and pay provisions are substantially similar. *See also Grayson*, 79 F.3d at 1096 ("[P]laintiffs need show only 'that their positions are similar, not identical,' to the positions held by the putative class members.") (citation omitted). Moreover, "the burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity." *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003).

However, this burden is not an insurmountable one. Cross "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.") (citation omitted). *See Hipp*, 252 F.3d at 1219. Moreover, "the 'similarly situated' requirement of § 216(b) is <u>more elastic and less stringent</u> than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F.3d at 1095 (emphasis added).

On the other hand, "[a] court may deny plaintiffs' right to proceed collectively if the action arises from circumstances <u>purely personal to the plaintiff</u>, and <u>not from any generally applicable rule, policy, or practice</u>." *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 (N.D. Ga. July 25, 2006) (quoting *England v. New Century Financial Corp.*, 370 F. Supp. 2d 504, 507

19

(M.D. La. 2005)) (emphasis added).  Under Eleventh Circuit precedent, "a unified policy, plan, or scheme of discrimination [or FLSA prohibited actions] <u>may not [even] be required</u> to satisfy the more liberal "similarly situated" requirement of § 216(b)[.]" *Grayson*, 79 F.3d at 1095.

Here, Cross has primarily pointed to Noland's automatic pay procedure of deducting for a thirty minute meal break as the "unified policy, plan, or scheme" that allegedly resulted in the proposed opt-in class not receiving overtime wages in contravention of FLSA.  As evidentiary support, Cross relies upon the declarations referenced above as well as several critical factual admissions from Noland including as follows:  (1) that it automatically deducts thirty minutes for a meal break from time shown on time records for each hourly, non-exempt employee; that at least with respect to its CNA and LPN employees, it admits that patient needs may, from time to time interrupt their meal breaks; that some of its hourly, non-exempt employees clock in and begin working before the start of their scheduled shift; and that the only way an employee maybe paid for work performed during a meal period, and not otherwise have that time deducted from their pay, is if the employee reports the missed meal period to her supervisor.

While Noland counters that its official stated policy makes it clear that its employees are not to work in excess of forty hours per week, this written statement

does not directly address the substance of what it has conceded is <u>admittedly done in practice as part of an automatic payment process</u> in terms of the time deducted for meals.  Moreover, Cross and the other declarants have offered specific testimony that substantiates that they were repeatedly unable to take a full thirty minutes for lunch and/or that they were not paid for time spent working after clocking out.  While the court recognizes that Noland has presented several declarations to the court that indicate other employees have had few, if any lunch period or off the clock problems, on the balance such competing evidence does not dissuade the court from deciding to conditionally certify a collection action in favor of Cross.[9]

Moreover, the court agrees with Cross that the *Reed* case, heavily relied upon by Noland, is significantly distinguishable.  (Doc. 28 at 2-3).  In particular, *Reed* did not involve one geographical location as here, but rather several different campuses.  *Id.*, 246 F. Supp. 2d at 1232 ("Given the experiential likelihood that various campuses enjoy considerable autonomy, the absence of evidence to the contrary harms rather than helps the plaintiffs' case.").  Also, *Reed* did not involve evidence of a uniform

_____

[9]  In particular as Cross points out, the court is concerned about the potentially intimidating manner in which these declarations were obtained by Noland.  (*See* Doc. 28 at 9).

policy of time-keeping or potential pattern of systemic abuse,[10] including, in particular, an automatic thirty minute deduction for meal breaks, applicable to all

---

[10]   As the *Reed* decision fully acknowledged, "a pattern or practice would satisfy the 'similarly situated' requirement and, given the plaintiffs' failure to make a showing of substantial similarity through other means, represents the only avenue left open to them through which to meet their burden of justifying a collective action." 246 F. Supp. 2d at 1233-34 (footnotes omitted).   In *Reed*, the court ultimately determined that the plaintiffs had failed to present sufficient evidence of such a pattern or practice to support the conditional certification of the proposed class." *Id.* at 1234, 1236-37.

Further in *Reed*, the court acknowledged but refused to follow another district court decision that permitted conditional collection action status on a systemic-based theory:

> Although uncited by either party, the Court is aware of the recent ruling in *Barron v. Henry County School System*, 242 F. Supp. 2d 1096 (M.D. Ala. 2003), conditionally certifying a defendant-wide class based on an affidavit from Mr. Culver substantively identical to that proffered here. The Barron Court considered Mr. Culver's review of the interview sheets of two custodial employees of the defendant sufficient to support his conclusion that "there are systemic FLSA abuses based on a practice of requiring extra work of custodians." *Id.* at 1105.   The Court apparently then extrapolated that systemic violations concerning custodians adequately evidenced systemic violations concerning all hourly employees. *See id.*

*Reed*, 246 F. Supp. 2d at 1236.   The evidence of Noland's automatic meal period deduction applicable to all hourly employees presented in this case is much more compelling than that relied upon to support conditional certification in either *Reed* or *Barron*.

hourly, non-exempt employees.  Finally to the extent that this court's analysis differs in some respects from that contained in *Reed*, that opinion is, at most only persuasive authority, and this court is not bound to follow it.

Therefore, Cross seeks to represent a class of hourly, non-exempt employees at Noland's Village location, including positions beyond CNA or LNA.  While the court acknowledges that Cross's stronger case for conditional certification lies with nurses as opposed to non-nurses, given the lenient standard it is to apply at this conditional stage and the automatic meal period deduction that Noland admits applies universally at the Village, regardless of the particular employee's slated department and/or facility, the court, in its discretion, determines that Cross has demonstrated a reasonable basis to conclude that the similarly situated requirement regarding compensation has been satisfied with respect to the entire class of all hourly, non-exempt employees at Noland's Village.[11]  The court relatedly determines that the policy of judicial economy will be served by such conditional collection action certification and that the value of this judicial economy outweighs any competing

_____

[11]  To include all hourly employees, whether supervisory or non-supervisory, and whether serving within the Village's nursing home, ALF, or SCALF, which are all located within the Village as well as all the Village's divisions:  environmental services, communication, maintenance, activity, and dietary.

concerns over "stirring up" litigation.[12]  *See Hoffmann-La Roche*, 493 U.S. at 170

("The judicial system benefits by efficient resolution in one proceeding of common

issues of law and fact arising from the same alleged discriminatory [or FLSA-

violating] activity."); *see, e.g., Brooks v. BellSouth Telecommunications, Inc.*, 164

F.R.D. 561, 567 (N.D. Ala. 1995) ("As noted by the court in *Severtson v. Phillips*

---

[12]  In their briefs, the parties have spent considerably less time focusing on the off the clock issues. Therefore, the particular policy driving this conditional class certification decision is Noland's automatic meal deduction process.  Accordingly, because the court has already determined that notice of conditional collection action certification should be sent to all hourly employees concerning Cross's meal period claim, the court relatedly concludes that it is similarly appropriate to include pre-shift and post-shift claims in this same notice.

In particular, the court disagrees with Noland that just because Cross lacks specific evidence that Noland instructed employees to work of the clock means that conditional certification is inappropriate.  As Cross correctly points out 29 C.F.R. § 785.13 provides that "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." *Id.*  Moreover, an employer "cannot sit back and accept the benefits without compensating for them." *Id.*  Furthermore, "[t]he mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." *Id.*

In contrast with this regulation, the evidence, at this juncture shows, that Noland admits that at least some of its employees work off the clock, including Cross, and that as a matter of policy, it is the responsibility of the employees to report such off the clock work to Noland (as opposed to Noland's management to independently police such activities).  AF Nos. 5.1, 55, 56.  Additionally, Noland requires employees to clock out by a certain time for a shift or they will be disciplined.  AF No. 6.1.

*Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991), 'courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.'"), *aff'd,* 114 F.3d 1202 (11th Cir. 1997).

### B.    Tolling Motion

"'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *See, e.g., Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) (citation omitted). Moreover, "[t]he burden is on the plaintiff to show that equitable tolling is warranted." *Justice v. U.S.*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citing *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir.1993)). Furthermore, "[t]he Supreme Court has made clear that tolling is an <u>extraordinary remedy</u> which should be <u>extended only sparingly</u>." *Justice*, 6 F.3d at 1479 (citing *Irwin v. Veterans Admin*., 498 U.S. 89, 96 (1990)) (emphasis added).

Here, Cross has not met her burden in supporting the Tolling Motion. For example, she has not shown that any untimeliness is due to "extraordinary circumstances that are beyond [the potential opt-in members'] control and unavoidable even with diligence." *See Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (refusing to apply equitable tolling to late-filed *habeas corpus* petition). Alternatively, Cross has not shown that Noland has somehow misled potential

collective action members into letting the statutory period lapse, that the potential class members "ha[ve] no reasonable way of discovering the wrong perpetrated against" them or that the potential class members have made efforts to preserve their rights through technically deficient filings.  *See Justice*, 6 F.3d at 1479 (discussing collection of cases applying equitable tolling) (citations omitted); (*see also* Doc. 22 at 5-6).

The only case authority cited by Cross that is even potentially closely on point is *Gavin v. Healthcare Auth. for Med. West*, 2:07-CV-1902, (N.D. Ala. Mar. 17, 2008) (Doc. 23 ¶ 6), another FLSA case.  However, in reviewing the *Gavin* CM/ECF case docket, the court notes that Judge Bowdre's ruling is in a margin order format only and contains no analysis.  Further, while the related motion to toll (Doc. 16) filed in the *Gavin* case indicated that it was opposed, no opposition was ever filed by the defendant.  Therefore in the absence of a developed record on the tolling issue, the court does not find the *Gavin* authority granting such a motion to be instructive, much less persuasive.  Accordingly for all these reasons, the Tolling Motion is **DENIED**.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

1.    Cross's  Notice Motion pursuant to 29 U.S.C. § 216(b) is **GRANTED**;

2.    The conditional collective action, as defined and modified herein, is

26

certified for notice purposes only;

3.   Cross shall file an amended proposed notice of right to opt-in to lawsuit within fourteen days from the date this order is entered.  In particular this amended proposed notice should reflect that it is limited to current and former hourly, non-exempt employees of Noland's Village location.  Cross shall also email a copy of her amended proposed notice to chambers in WordPerfect format.  At least five calendar days prior to the deadline for filing and emailing the amended proposed notice, Cross shall provide Noland with a copy of it, and the parties are ordered to work in good faith to resolve any disputes that they may have regarding the format of the amended proposed notice <u>prior to Cross's filing deadline</u>;

4.   Noland shall file and email to chambers any unresolved objections to the amended proposed notice within twenty days from the entry date of this order;

5.   Cross shall file and email to chambers her response to any unresolved objections to the amended proposed notice filed by Noland within thirty days from the entry date of this order;

6.   Noland shall provide Cross with the names and last known physical addresses of all individuals in the putative FLSA collective action within thirty days from the entry date of this order;

7.   Once the form of the notice has been finally approved by the court, then

27

Cross shall provide notice by First Class Mail to all additional putative opt-in collection action plaintiffs; and

8.    Cross's Tolling Motion is **DENIED**.

**DONE** and **ORDERED** this the 17th day of February, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

28